**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

HAMBURG-SUD NORTH AMERICA, INC.
and HAMBURG SUDAMERIKANISHE
DAMPFSCHIFFAHRTS GESELLSCHAFT
KA.,

                   Plaintiffs,

-against-

AMERICAN INDEPENDENT LINE, INC. and
BRASIL CARGO SERVICES LOGISTICA,
LTD. and BOMIX INDUSTRIA DE
EMBALAGENS LTDA.,

                   Defendants.

Index No: 10-cv-4559 (KAM)

**VERIFIED ANSWER TO
AMENDED VERIFIED
COMPLAINT AND
VERIFIED CROSS-CLAIM
FOR DECLARATORY
JUDGMENT TO DETERMINE
ENFORCEABILITY OF
CONTRACT TERMS
AND CONDITIONS**

Defendant/Respondent/Petitioner, American Independent Line, Inc. ("AIL" or
"Defendant"), by and through its attorneys, Holland & Knight LLP, as for its Verified Answer to
the Amended Verified Complaint of Plaintiff Hamburg-Sud North America, Inc. and Hamburg
Sudamerikanishe Dampfschiffahrts Gesellschaft KA (together "Plaintiffs"), respectfully states
upon information and belief:

      1.     Denies having knowledge or information sufficient to form a belief as to the truth
or falsity of the allegations set forth in paragraph 1 of the Amended Verified Complaint.

      2.     Admits that Hamburg-Sud North America Inc. issued bill of lading no.
SUDU280017845018 dated December 7, 2008.  Denies that the goods shipped were the goods of
AIL.  Except as so admitted, denies having knowledge or information sufficient to form a belief
as to the truth or falsity of the allegations set forth in paragraph 2 of the Amended Verified
Complaint.

3.    Admits that AIL is within the personal jurisdiction of this Court. Except as so admitted, denies the remaining allegations in paragraph 3 of the Amended Verified Complaint.

4.    Admits that the address of Brasil Cargo Services is Praca Barao Do Rio Branco, NR 14-7 Andar Sala 74, Centro - Santos/SP - Brasil - CEP: 11010-040. Except as so admitted, denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 4 of the Amended Verified Complaint.

5.    Denies having knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 5 of the Amended Verified Complaint.

6.    Admits that Plaintiffs' claims are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and are within the admiralty and maritime jurisdiction of the United States and of this Honorable Court pursuant to 28 U.S.C. § 1333(1).

7.    Admits that AIL issued bill of lading no. AILW8644992 in Great Neck, New York. Except as so admitted, denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 7 of the Amended Verified Complaint that do not pertain to AIL.

8.    Paragraph 8 contains a legal conclusion as to which no answer is required.

9.    The terms of bill of lading no. SUDU280017845018 dated December 7, 2008 speak for themselves, thus no answer to paragraph 9 is required.

10.    The terms of bill of lading no. SUDU280017845018 dated December 7, 2008 speak for themselves, thus no answer to paragraph 10 is required.

11.    The terms of bill of lading no. SUDU280017845018 dated December 7, 2008 speak for themselves, thus no answer to paragraph 11 is required.

12.    Paragraph 12 contains a legal conclusion as to which no answer is required.

2

12.     Paragraph 12 contains a legal conclusion as to which no answer is required.

13.     The terms of the U.S. Carriage of Goods by Sea Act, 46 U.S.C. § 30701 (notes) ("COGSA") speak for themselves. The remaining allegation of paragraph 13 contains a legal conclusion as to which no answer is required.

14.     The terms of COGSA speak for themselves, thus no answer to paragraph 14 is required.

15.     The terms of COGSA speak for themselves, thus no answer to paragraph 15 is required.

16.     The terms of COGSA speak for themselves, thus no answer to paragraph 16 is required.

17.     The terms of COGSA speak for themselves, thus no answer to paragraph 17 is required.

18.     Denies the allegations in paragraph 18 of the Amended Verified Complaint as they pertain to AIL. Admits that Bomix disputes and objects to the applicability and enforceability of 46 U.S.C. § 30701, Notes §§ 4(5) and 3(6). Except as so denied and admitted, denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 18 of the Amended Verified Complaint that do not pertain to AIL.

19.     Denies the allegations in paragraph 19 of the Amended Verified Complaint as they pertain to AIL. Admits that Bomix disputes and denies that U.S. COGSA governs the carrier's rights, duties, responsibilities, defenses and limitations during the period of the carrier's responsibility for the goods shipped under the contract, and/or that the carrier shall not in any event be liable for any loss or damage to or in connection with transporting the shipper's goods in

3

excess of $500 per package or customary freight unit. Except as so denied and admitted, denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 19 of the Amended Verified Complaint that do not pertain to AIL.

20.     Denies having knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 20 of the Amended Verified Complaint.

21.     The terms of bill of lading no. SUDU280017845018 dated December 7, 2008 speak for themselves, thus no answer to paragraph 21 is required.

22.     The terms of bill of lading no. SUDU280017845018 dated December 7, 2008 speak for themselves, thus no answer to paragraph 22 is required.

23.     Admit that the goods stowed in container SUDU970013-3 (one 40' flatrack container) were damaged while the *Libra Corcovado* was calling at the port of Norfolk, Virginia. Except as so admitted, denies the remaining allegations set forth in paragraph 23 of the Amended Verified Complaint.

24.     Admits that the goods stowed in container SUDU970013-3 (one 40' flatrack container) were damaged in Norfolk, Virginia and not transported to Salvador, Brazil but instead returned to the factory and that the goods stowed in container IPXU399852-5 were transported to Salvador, Brazil. Except as so admitted, denies the remaining allegations set forth in paragraph 24 of the Amended Verified Complaint.

25.     Paragraph 25 (erroneously numbered as paragraph 26) contains a legal conclusion as to which no answer is required.

26.     Paragraph 26 (erroneously numbered as paragraph 27) contains a legal conclusion as to which no answer is required.

4

27.     Paragraph 27 (erroneously numbered as paragraph 28) contains a legal conclusion as to which no answer is required.

28.     Denies the allegations set forth in paragraph 28 (erroneously numbered as paragraph 29) of the Amended Verified Complaint as they pertain to AIL. The allegations set forth in paragraph 28 contain legal conclusions as to which no answer is required.

29.     Denies that Plaintiffs are entitled to the relief sought against AIL as set forth in the *ad damnun* clause.

### FIRST AFFIRMATIVE DEFENSE

30.     AIL alleges, by way of an affirmative defense, that said shipments described in Plaintiffs' Amended Verified Complaint were subject to all the terms, conditions and exceptions contained in AIL bill of lading no. AILW8644992. Any shortage, loss or damage to the shipment was due to causes for which AIL was not liable or responsible by virtue of the provisions of the Carriage of Goods by Sea Act ("COGSA"), *reprinted in* notes following 46 U.S.C. § 30701 (formerly 46 U.S.C. § 1301 *et seq.*), and/or the Harter Act, 46 U.S.C. §§ 30702-30707 (formerly 46 U.S.C. App. § 190 *et seq.,*) and/or the applicable AIL tariffs and/or provisions of the AIL bill of lading and/or the general maritime law of the United States.

### SECOND AFFIRMATIVE DEFENSE

31.     AIL alleges, by way of an affirmative defense, that any damage sustained or to be asserted by cargo interests was a result of the negligence or recklessness of other parties over which AIL had no control and/or for which AIL cannot be held liable.

### THIRD AFFIRMATIVE DEFENSE

32.     AIL alleges, by way of an affirmative defense, that it is entitled to indemnification from Hamburg-Sud North America Inc. for any and all damages for which it may ultimately be

5

found liable to cargo interests, which liability AIL denies, including reasonable attorneys' fees incurred in defending against any action brought by cargo interests against AIL.

## CROSS-CLAIM FOR DECLARATORY JUDGMENT

Defendant/Respondent/Petitioner, by and through its attorneys Holland & Knight LLP, while denying that is it in any way obligated or liable for claims asserted by Plaintiffs, alleges by way of Cross-Claim/Petition for Declaratory Judgment against Defendant Bomix Industria de Embalagens Ltda ("Bomix") as follows:

33.    AIL repeats and realleges each and every admission, denial, and denial for lack of knowledge or information sufficient to form a belief, as set forth in paragraphs 1 though 32 of its Verified Answer to the Amended Verified Complaint above with the same force and effect as if set forth at length herein.

34.    The nature of this Cross-Claim/Petition is an action for declaratory judgment against co-defendant Bomix under 28 U.S.C. § 2201 of the Judicial Code for the purpose of determining a question in actual controversy between the parties, namely the validity of certain Terms and Conditions of a written contract for services provided by AIL to Bomix in connection with the ocean transportation of Bomix's goods from the United States to Brazil.

35.    As is set forth in more detail below, AIL's Cross-claim/Petition against Bomix arises out of the same transaction or occurrence that is the subject matter of Plaintiffs' original action.

36.    The written contract upon which this Cross-claim/Petition is based is AIL bill of lading no. AILW8644992, dated December 7, 2008, a contract of carriage which provided for the transportation of certain goods belonging to Bomix from the port of Baltimore, Maryland for discharge at the port of Salvador, Brazil.  A true and correct copy of AIL bill of lading no.

AILW8644992, dated December 7, 2008 is attached hereto as Exhibit 1. A true and correct copy

of the Terms and Conditions for AIL's bills of lading is attached hereto as Exhibit 2.

37.     AIL bill of lading no. AILW8644992, dated December 7, 2008, provided among

other terms the following:

> **1. (Definitions)** When used in this Bill of Lading (A) "Ocean Carrier" means
> American Independent Line, Inc., which performs the sea carriage of the Goods,
> and the vessel, her owner, and demise charterer, whether any of the preceding
> parties is acting as carrier or bailee.
>
> <p align="center">*   *   *   *   *</p>
>
> (E) "Merchant" includes the shipper, consignor, consignee, owner, and reciver of
> the Goods and the holder of this Bill of Lading.
>
> (F) "Goods" means the cargo described on the face of this Bill of Lading and, if
> the cargo is packed into container(s) supplied or furnished by or on behalf of the
> Merchant, include the container(s) as well.
>
> <p align="center">*   *   *   *   *</p>
>
> **2. (Clause Paramount)** . . . (B) If this Bill of Lading covers Goods moving to or
> from ports of the United States in foreign trade, then carriage of such goods shall
> be subject to the provisions of the United States Carriage of Goods by Sea Act,
> 1936, 46 U.S.C. P1300-1315 as amended (hereinafter "U.S. COGSA"), the terms
> of which shall be incorporated herein. The provisions of U.S. COGSA shall
> (except as otherwise specifically provided in this Bill of Lading) govern
> throughout the time when the Goods are in the custody of the Ocean Carrier and
> any other water carrier and as otherwise provided in this Bill of Lading.

38.     Pursuant to Clause 2 of AIL bill of lading no. AILW8644992, COGSA (46 U.S.C.

§ 30701 (notes)) governs the rights, duties, responsibilities, limitations and defenses of the

parties herein.

39.     In addition, COGSA applies to and governs the rights, duties, responsibilities,

limitations and defenses of the parties to the shipment of goods in question by its own force and

effect.

40.     COGSA 46 U.S.C. § 30702 entitled "Application" provides the following:

<p align="center">7</p>

> **(a) In general.** - Except as otherwise provided, this chapter applies to a carrier engaged in the carriage of goods to or from any port in the United States.

COGSA, therefore, applies to "all contracts for carriage of goods by sea to or from ports of the

United States in foreign trade."  46 U.S.C. § 30701 (notes § 13).

> 41.    46 U.S.C. § 30701, notes § 1(a) and 1(e) entitled "Definitions" provide:

> (a) The term "carrier" includes the owner or the charterer who enters into a contract of carriage with a shipper.

> \*  \*  \*  \*  \*

> (e) The term "carriage of goods" covers the period from the time when the goods are loaded on to the time when they are discharged from the ship.

> 42.    46 U.S.C. § 30701, notes § 2 (formerly 46 U.S.C. § 1302) entitled "Duties and

rights of carrier" provides:

> Subject to the provisions of section 1306 of this title [section 6 of this note], under every contract of carriage of goods by sea, the carrier in relation to the loading, handling, stowage, carriage, custody, care, and discharge of such goods, shall be subject to the responsibilities and liabilities and entitled to the rights and immunities set forth in sections 1303 and 1304 of this title [sections 3 and 4 of this note].

> 43.    COGSA 46 U.S.C. § 30701, notes § 3(6) (formerly 46 U.S.C. § 1303(6)) entitled

"Responsibilities and liabilities of carrier and ship" provides, in relevant part:

> In any event the carrier and the ship shall be discharged from all liability in respect of loss and damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.  *Provided*, That if a notice of loss or damage, either apparent or concealed, is not given as provided for in this section, that fact shall not affect or prejudice the right of the shipper to bring suit within one year after the delivery of the goods or the date when the goods should have been delivered.

> 44.    COGSA 46 U.S.C. § 30701, notes § 4(5) (formerly 46 U.S.C. § 1304(5)) entitled

"Rights and immunities of carrier and ship" provides, in relevant part:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount

exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

45.     Upon information and belief, defendant Bomix disputes the applicability and enforceability of COGSA, in particular 46 U.S.C. § 30701, notes §§ 4(5) and 3(6), as they would be applied to AIL's bill of lading no. AILW8644992, dated December 7, 2008.

46.     Geodis Wilson USA, Inc. ("Wilson USA") engaged AIL, a non-vessel operating common carrier ("NVOCC")[1] to arrange transport of two packages from Baltimore, Maryland to Salvador, Brazil: one 40' flatrack container (container no. SUDU 970-13-3) containing a plastic injection molding machine and one 20' standard container (container no. IPXU 399 852-5) containing a plastic injection molding machine. AIL issued bill of lading no. AILW8644992, dated December 7, 2008 for carriage of the two packages with Wilson USA as the shipper and GW Gerenciamento de Fretes-Brazil as the consignee. Brasil Cargo Services Logistica Ltd was indicated as the notify party.

47.     AIL in turn contracted with plaintiff Hamburg-Sud North America, Inc. ("HSNA"), a ship operator and owner to provide ocean carriage of the two packages aboard the vessel *Libra Corcovado.* HSNA issued its own bill of lading no. SUDU280017845018, dated December 7, 2008 for the two packages with AIL as the shipper and AIL's agent in Brazil, Brasil Cargo Services, as the consignee.

48.     The *Libra Corcovado* sailed from Baltimore, Maryland with the two packages onboard on December 7, 2008.

---

[1] A NVOCC "means a common carrier that-- (A) does not operate the vessels by which the ocean transportation is provided; and (B) is a shipper in its relationship with an ocean common carrier." 46 U.S.C. § 40102.

9

49.     On December 11, 2008, AIL received notice from HSNA regarding an accident occurring in Norfolk, Virginia involving the 40' flatrack container (container no. SUDU 970013-3) containing one of the plastic injection molding machines.

50.     On April 12, 2010, an action was filed in Salvador, Brazil by Bomix against Milacron Equipamentos Plasticos Ltd, GW Gerenciamento de Fretes- Brasil, and Hamburg Sud Brasil Ltda for damages resulting from the incident in Norfolk, Virginia involving SUDU970013-3 (one 40' flatrack container) and the plastic injection molding machine contained therein ("Brazilian Action").

51.     As a common carrier for the cargo for which Bomix is claiming damages and that was shipped pursuant to AIL bill of lading no. AILW8644992, dated December 7, 2008, AIL is a potential defendant in the Brazilian Action.

52.     In the Brazilian Action, Bomix has sought the application of Brazilian (civil) law regarding strict liability.  Specifically, Bomix is claiming for material damages in the amount of US$523,149.61 for material damages as well as loss of earnings at R$35,400.36[2] per day, and R$500,000 for "moral" damages.  Bomix has not recognized the $500 package limitation contained  in COGSA 46 U.S.C. § 30701, notes § 4(5) (formerly 46 U.S.C. § 1304(5)) or the one-year statute of limitations contained in COGSA 46 U.S.C. § 30701, notes § 3(6) (formerly 46 U.S.C. § 1303(6)).

53.     Thus, Bomix, the ultimate consignee and owner of the goods shipped under AIL's contract of carriage disputes and denies that COGSA would govern AIL's rights, duties, responsibilities, defenses and limitations during the period of the carrier's responsibility for the goods shipped under the contract of carriage, and/or that the carrier shall not in any event be liable for any loss or damage to or in connection with transporting the shipper's goods in excess

---

[2] According to the August 1, 2011 online Wall Street Journal, 1 Brazil real = US$0.6451.

of $500 per package or customary freight unit. Bomix further disputes and denies that the carrier shall be discharged from all liability in respect to loss or damage unless the suit is brought within one year of the delivery of the goods or the date when the goods should have been delivered.

54.     Where there is a controversy as to the meaning and effect of a written contract, a party to the contract may seek interpretation by means of a declaratory judgment of a court having jurisdiction over the parties.

55.     A proceeding in the nature of a declaratory judgment is a form of remedial procedure which is particularly appropriate where the basic issue underlying the claim of the plaintiff is the interpretation or construction of a contract.

56.     The basic issue is whether AIL is entitled to limit its liability for any damage or loss to $500 per package or customary freight unit of the goods shipped.

57.     Bomix's position that Brazilian civil law applies to its claim for cargo damage to the exclusion of COGSA, including 46 U.S.C. § 30701, notes §§ 4(5) and 3(6), presents a matter of actual controversy by and between the parties and raises a question of the validity of the entire contract of carriage, thereby entitling AIL to the relief sought.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Respondent/Petitioner AIL demands a declaratory judgment pursuant to 28 U.S.C. § 2201, finding that AIL's contract of carriage is wholly valid and enforceable and that COGSA, in particular 46 U.S.C. § 30701, notes §§ 4(5) and 3(6), are valid and enforceable against defendant Bomix and that Defendant/Respondent/Petitioner AIL is entitled to a judgment declaring that any and all liability which may be found for the loss or damage to the goods may be, and hereby is, limited to the $500 per package limitation provided

11

by COGSA § 30701, notes § 4(5) for each box or package of the goods which was shipped under

AIL's contract of carriage, AIL bill of lading no. AILW8644992, dated December 7, 2008.

Dated:        New York, New York
              August 3, 2011

                                        HOLLAND & KNIGHT LLP

                                    By: _____
                                        Francesca Morris
                                        Lissa D. Schaupp
                                        31 West 52nd Street
                                        New York, New York 10019
                                        Telephone:  212-513-3200
                                        Telefax:  212-385-9010
                                        E-mail:  francesca.morris@hklaw.com
                                                 lissa.schaupp@hklaw.com

                                        Attorneys for Defendant,
                                        *American Independent Line, Inc.*

12

## VERIFICATION

STATE OF NEW YORK ⟩
⟩ ss:
COUNTY OF NASSAU ⟩

DAVID MOFFITT, being duly sworn, deposes and says:

That I am the Treasurer for defendant American Independent Line, Inc., that I have read

the foregoing Verified Answer and Verified Cross-claim/Petition for Declaratory Judgment and

know the contents thereof; that I know it to be true except as to matters therein stated to be

alleged upon information and belief, and as to those matters I believe them to be true.

DAVID MOFFITT

Sworn to before me this
3rd day of August, 201⟩

NOTARY PUBLIC

RICHARD M. AVIDON
NOTARY PUBLIC, State of New York
No. 52-5131080
Qualified in Suffolk County
Cert Filed in
Commission Expires Sept. 30,

13

#10510000_v1

# EXHIBIT 1

# American
# Independent Line

BILL OF LADING

FOR COMBINED TRANSPORT
AND PORT-TO-PORT SHIPMENT
FMC 14062 N

| PPER EXPORTER (COMPETE NAME AND ADDRESS) | BOOKING NO. | BILL OF LADING NO. |
|---|---|---|
| GEODIS WILSON USA, INC.<br>7513 CONELLEY DR.<br>HANOVER, MD 21076 | AI8644992 | AILW8644992 |
| | EXPORT REFERENCES | |
| | BAL23000011 | |

| NSIGNEE (COMPLETE NAME AND ADDRESS) | FORWARDING AGENT  F M C  NO.      FMC#224 CHB #3426 |
|---|---|
| GW GERENCIAMENTO DE FRETES-BRAZIL<br>CNPJ:52.147.923/0001-74<br>RUA CANTAGALO 1391-VILLA GOMEZ<br>SAO PAULO SP 03319-001<br>BRAZIL | GEODIS WILSON USA, INC.<br>7513 CONNELLEY DR. SUITE I<br>HANOVER, MD 21076<br>USA |

| OTIFY PARTY (COMPLETE NAME AND ADDRESS) | POINT AND COUNTRY OF ORIGIN OF GOODS |
|---|---|
| | U.S.A. |
| | ALSO NOTIFY - ROUTING & INSTRUCTIONS |
| | FOR RELEASE CONTACT:<br>BRASIL CARGO SERVICE LOGISTICA LTDA.<br>PRACA BARAO DO RIO BRANCO, NR 14-7 ANDAR SALA 74<br>CENTRO - SANTOS/SP - BRASIL - CEP: 11010-040<br>TEL: 55 13 3219-9400  FAX: 55 13 3219-9771<br>ATTN: ANTONIO MENDES / APARECIDO COSTA |

| PRE-CARRIAGE BY * | PLACE OF RECEIPT BY PRE-CARRIER * | |
|---|---|---|
| EXPORTING CARRIER<br>Libra Corcovado  V.42S | PORT OF LOADING<br>Baltimore, MD | LOADING PIER / TERMINAL |
| PORT OF DISCHARGE<br>Salvador | PLACE OF DELIVERY BY ON CARRIER * | TYPE OF MOVE<br>PORT TO PORT CY |

PARTICULARS FURNISHED BY SHIPPER

| ARKS & NOS/CONTAINER NOS | NOS OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| SUDU 970 013-3<br>TARE WEIGHT 5250 KG | 1 | 40' FLATRACK CONTAINER SLAC 1 BOX<br>MILACRON POWERLINE MODEL NT550-54<br>PLASTIC INJECTION MOLDING MACHINE | 39536 KGS | 96.192 CBM |
| IPXU 399 852-5<br>SEAL: 2491014<br>TARE WEIGHT 2200 KG | 1 | 20' STANDARD CONTAINER SLAC 1 BOX<br>MILACRON POWERLINE MODEL NT550-54<br>PLASTIC INJECTION MOLDING MACHINE<br>NCM#8477.10.11 | 1064 KGS | 5.330 CBM |
| BOMIX IND.<br>VIA SALVADOR | | FREIGHT PREPAID<br><br>ON BOARD LIBRA CORCOVADO V.42S AT BALTIMORE, MD<br>ON DECEMBER 7, 2008.<br><br>AES X20081117022835 | | |

THESE COMMODITIES, TECHNOLOGY OR SOFTWARE WERE EXPORTED FROM
THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION
REGULATIONS. DIVERSION CONTRARY TO U.S. LAW PROHIBITED.

**COPY NON-NEGOTIABLE**

| OCEAN FREIGHT AND CHARGES | SHIPPERS DECLARED VALUE $<br>AS PER TARIFF AND CARRIERS LIABILITY LIMITS<br>(SEE CLAUSE 17 OVERLEAF) | SUBJECT TO EXTRA FREIGHT |
|---|---|---|

FREIGHT PREPAID
40' FR X 1       $6980.00 USD
20' STD X 1     $1530.00 USD
TOTAL            $8510.00 USD

DESTINATION THC COLLECT

Received by the Carrier from the shipper in apparent good order and condition (unless otherwise noted herein) the total numbers or quantity of containers or other packages or units indicated above, for transportation subject to all the terms hereof (including the terms on the reverse hereof) from the place of receipt or the port of loading, whichever applicable, to the port of discharge or the place of delivery, whichever applicable. All subject to the terms appearing on the face and back of this Bill of Lading and the Carriers applicable tariff.

IN WITNESS WHEREOF, THREE (3) ORIGINAL BILLS OF LADING, ALL OF THE SAME TENOR AND DATE, HAVE BEEN SIGNED, ONE OF WHICH BEING ACCOMPLISHED, THE OTHERS TO STAND VOID.

By   AMERICAN INDEPENDENT LINE, INC., AS CARRIER

FMC No. 14062N

6

DATED AT   GREAT NECK, NY       ON   December 7, 2008

* APPLICABLE ONLY WHEN DOCUMENT USED AS A COMBINED-TRANSPORT BILL OF LADING

# EXHIBIT 2

RECEIVED by the Ocean or Inland Carrier from the merchant in apparent good order and condition unless otherwise indicated, the Goods, or the container(s) or package(s) said to contain the Goods, to be carried subject to all the terms on the face and back of this Bill of Lading, from the place of receipt or the port of loading to the port of discharge or place of delivery, there to be delivered. If required by the Ocean Carrier, this Bill of Lading duly endorsed must be surrendered in exchange for the Goods or delivery order. None of the terms of this Bill of Lading can be waived by or for the Ocean Carrier except by express waiver signed by a duly authorized agent of Ocean Carrier.

**1. (Definitions)** When used in this Bill of Lading (A) "Ocean Carrier" means American Independent Line, Inc., which performs the sea carriage of Goods, and the vessel, her owner, and demise charterer, whether any of the preceding parties is acting as carrier or bailee.

(B) "Inland Carrier" means carriers (other than the Ocean Carrier) by land, water or air, participating in combined transport of the Goods, whether acting as carrier or bailee.

(C) "Combined Transport" means carriage of the Goods under this Bill of Lading from place of receipt from merchant to place of delivery to Merchant by the Ocean Carrier plus one or more Inland Carriers.

(D) "Port-to-Port Transportation" means carriage of the Goods under this Bill of Lading other than combined transport.

(E) "Merchant" includes the shipper, consignor, consignee, owner, and receiver of the Goods and the holder of this Bill of Lading.

(F) "Goods" means the cargo described on the face of this Bill of Lading and, if the cargo is packed into container(s) supplied or furnished by or on behalf of the Merchant, include the container(s) as well.

(G) "Vessel" includes the vessel named on the face of this Bill of Lading and any ship, craft, lighter, barge or other means of transport that is substituted in whole or in part for that vessel.

(H) "Container" includes any containers (including an open top container) flat rack, platform, trailer, transportable tank, pallet or any other device used for transportation of goods.

(I) "Laden on Board" or similar words endorsed on this Bill of Lading means that the Goods have been loaded on board the Vessel or are in the custody of the Ocean Carrier, and in the event of Combined Transport if the originating carrier is an Inland Carrier. ""On Board"" means that the Goods have been loaded on board rail cars or other means of Inland carriage or are in the custody of a participating railroad or other Inland Carrier.

(J) "Subcontractor" includes stevedores, longshoremen, lighterers, terminal operators, warehousemen, truckers, agents, servants, and any person, firm, corporation or other legal entity which performs services incidental to the carriage of the Goods.

(K) "United States" or "U.S." means the United States of America.

**2. (Clause Paramount)** (A) Insofar as this Bill of Lading covers carriage of Goods by water, this Bill of Lading shall have effect subject to the provisions of the "Hague Rules", namely the International Conventions for the Unification of Certain Rules Relating to Bills of Lading, dated at Brussels, August 25, 1924, as amended (including, where enacted, the Protocol dated at Brussels, February 23, 1968, known as the Visby Rules), as enacted in the country of shipment. When no such enactment is in force in the country of shipment or is otherwise compulsorily applicable, the Hague Rules as enacted in the country of destination shall apply. When no such enactment is in force in the country of shipment or in the country of destination, or is otherwise compulsorily applicable, the terms of the Hague Rules as enacted by the Convention shall apply. (B) If this Bill of Lading covers Goods moving to or from ports of the United States in foreign trade, then carriage of such goods shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, 46 U.S.C. P1300-1315 as amended (hereinafter "U.S. COGSA"), the terms of which shall be incorporated herein. The provisions of U.S. COGSA shall (except as otherwise specifically provided in this Bill of Lading) govern throughout the time when the Goods are in the custody of the Ocean Carrier and any other water carrier and as otherwise provided in this Bill of Lading.

**3. (Law and Jurisdiction)** Whenever the Carriage of Goods by Sea Act 1936 (COSGA) of the United States of America applies, this contract is to be governed by United States Law, and the United States Federal Court, southern District of New York is to have exclusive jurisdiction to all disputes hereunder. In all other cases this Bill of Lading is subject to English law and jurisdiction.

**4. (Limitation of Liability Statutes)** Nothing in this Bill of Lading shall operate to limit or deprive the Ocean Carrier of any statutory protection, exemption from, or limitation of liability authorized by the applicable laws, statutes, or regulations of any country.

**5.(Sub-Contracting: Exemptions and Immunities of Sub-contractors)** (A) The Ocean Carrier shall be entitled to subcontract on any terms the whole or part of the handling storage, or carrier of the Goods and all duties whatsoever undertaken by the Ocean Carrier in relation to the Goods. (B) Merchant warrants that no claim shall be made against any subcontractor (as defined in Article 1 (J), or Subcontractor, of Ocean Carrier, except Inland Carriers where otherwise appropriate, that imposes or attempts to impose upon any of them or any vessel owned or operated by any of them any liability in connection with the Goods, and, if any such claims should nevertheless be made, to indemnify the Ocean Carrier against all consequences of such claims. (C) Without prejudice to the foregoing, it is expressly agreed that every such Subcontractor (and Subcontractor's Subcontractor) shall have the benefit of all provisions in this Bill of Lading for the benefit of the Ocean Carrier as if such provisions were expressly for the Subcontractor's benefit. In entering into this contract the Ocean Carrier, to the extent of those provisions, does so not only on its own behalf but also on behalf of such Subcontractors.

**6. (Route to Transport)** (A) The Goods may, at the Ocean Carriers absolute discretion, be carried as a single shipment or as several shipments by the Vessel and/or any other means of transport by land, water, or air and by any route whatsoever, whether or not such route is the direct, advertised, or customary route. (B) The Vessel shall have liberty to call and/or stay at any port or place in or out of the direct, advertised, or customary route, once or more often and in any order, and/or to omit calling at any port of place whether scheduled or not. (C) The Vessel shall have liberty, either with or without the Goods on board and either before or after proceeding toward the port of discharge to adjust to compasses and other navigational instruments, make trial trips or tests, dry dock, go to repair yards, shift berths, take on fuel or stores, embark or disembark any person, carry contraband, explosives, munitions, war-like stores and hazardous cargo, sail with or without pilots, tow or be towed, and save or attempt to save life or property. (D) If the Goods in whole or in part are for any reason not carried on the Vessel named in this Bill of Lading, or if loading the Goods is delayed or is likely to detain the Vessel, the Vessel may proceed without carrying or loading the Goods in whole or in part, and notice to merchant of such sailing is hereby waived. Ocean Carrier may forward the Goods under the terms of this Bill of Lading on the next available ship or at Ocean Carrier's option by any other means of transportation, whether by land, water or air. (E) At Ocean Carrier's option and without notice to Merchant, another ship or ships may be substituted for the Vessel named in this Bill of Lading, whether or not the substitute ship is owned or operated by Ocean Carrier or arrives or departs, or is scheduled to arrive or depart, before or after the Vessel named by this Bill of Lading. (F) Any action taken by the Ocean Carrier under this Article 6 shall be deemed to be included within the contractual carriage and such action, or delay resulting therefrom, shall not be considered a deviation. Should the Ocean Carrier be held liable in respect of such action, the Ocean Carrier shall be entitled to the full benefit of all privileges, rights, and immunities contained in this Bill of Lading.

**7. (Responsibility)** (A) Insofar as this Bill of Lading is used for Port-to-Port Transportation of the Goods, the Ocean Carrier shall not be responsible for loss of or damage to the Goods caused before loading or after discharge "Loading" shall be deemed to commence with the hooking on the vessel's tackle, or if not using the vessel's tackle, with the receipt of the Goods on deck or in the hold of (if the Goods are in bulk liquid) in the vessel's permanent pipe connections. "Discharge" shall be deemed to be completed when the Goods have been unhooked from the vessel's tackle or removed from the vessel's deck or passed beyond the vessel's deck or passed beyond the vessel's permanent pipe connections. (B) Insofar as this Bill of Lading is used for combined transport of the Goods, the responsibility of the Ocean Carrier and each Inland Carrier with respect to the Goods shall be limited to the period when the carrier has custody of the Goods, and no carrier, either Ocean or Inland, shall be responsible for any loss or damage caused while the Goods are not in its custody. Any claim for loss of or damage to the Goods, including loss or damages resulting from delay, should be made against the carrier having custody of the Goods when the loss or damage or delay was caused. (C) If it is established by the Merchant that the Ocean Carrier is responsible for loss of or damage to or in connection with the Goods, such responsibility, subject to the provisions of this Bill of Lading, shall be to the extent following but not further. (1) With respect to loss or damage caused during the period from the time when the Goods arrived at the sea terminal at the port of loading to the time when they left the sea terminal at the port of discharge, or caused during any previous or subsequent period of carriage by sea or waterways, to the extent prescribed by the applicable Hague Rules as provided in Article 2. (2) Save as indicated b (1) above, with respect to loss or damage caused during the handling, storage of the Goods by Ocean Carrier's Subcontractor, to the extent to which such Subcontractor would have been liable to the Merchant if he had made a direct and separate contract with the Merchant in respect of such handling, storage or carriage, provided, however, that if the Ocean Carrier is not authorized under any applicable laws, rules or regulations to undertake such handling, storage, or carriage under its own responsibility, the Ocean Carrier shall only be liable for procuring such handling, storage or carriage.

If such handling, storage or carriage occurred in or between points in Europe, or where otherwise applicable, such responsibility shall be governed (a) if by road by the Convention on the Contract for the International Carriage of Goods by Road, dated 19 May, 1956 (CMR); (b) if by rail, by the International Convention Concerning the Carriage of Goods by Rail dated 25 February, 1961 (CIM); (c) if by air, by the Convention for the Unification of Certain Rules Relating to International Carriage by Air, signed Warsaw 12 October, 1929, as amended by the Hague Protocol dated 28 September, 1955 (Warsaw Convention); (d) if it is established by the Merchant that an Inland Carrier is responsible for loss of or damage to or in connection with the Goods, such responsibility shall be to the extent, but not further, than the Inland Carrier would have been liable to the Merchant if he had made a direct and separate contract with the Merchant in respect of handling, storage or carriage of the Goods, as applicable. (e) Notwithstanding foregoing Article 7 (A) or 7 (B), the Ocean Carrier does not undertake that the Goods shall arrive at the port of discharge or place of delivery at any particular time or in time to meet any particular market or use, and the Ocean Carrier shall not be responsible for any direct or indirect loss or damage that is caused through delay. (f) If this Bill of Lading is used for Port-to-Port Transportation, the column indicating final destination on the face of this Bill of Lading is solely for the purpose of the Merchant's reference, and the Ocean Carrier's responsibility for the Goods shall in all cases cease at the time of discharge of the Goods at the port of discharge.

**8. (Liberties)** (A) In any situation whatsoever whether or not existing or anticipated before commencement of or during the transport, which in the judgement of the Ocean Carrier (including for the purpose of this Article the Master and any person charged with the transport or safekeeping of the Goods) has given or is likely to give rise to danger, injury, loss, delay, or disadvantage of whatsoever nature to the Vessel, the Ocean Carrier, a vehicle, any person, the Goods or any property, or has rendered or is likely to render it in any way unsafe, impracticable, unlawful, or against the interest of the Ocean Carrier or the Merchant to commence or continue the transport or to discharge the Goods at the port of discharge or to deliver the Goods at the place of delivery by the route and in the manner originally intended by the Ocean Carrier, the Ocean Carrier (1) at the time shall be entitled to unpack the container(s) or otherwise dispose of the Goods in such way as the Ocean Carrier may deem advisable at the risk and expense of the Merchant and/or (2) before the Goods are loaded on the Vessel, a vehicle, or other means of transport at the place of receipt or port of loading, shall be entitled to cancel the contract of carriage without compensation and to require the Merchant to take delivery of the Goods and, upon his failure to do so, to warehouse or place them at any place selected by the Ocean Carrier at the risk and expense of the Merchant and/or (3) if the Goods are at a place awaiting transshipment, shall be entitled to terminate the transport there and to store them at any place selected by the Ocean Carrier at the risk and expense of the Merchant, and/or (4) if the Goods are loaded on the Vessel, a vehicle, or other means of transport whether or not approaching, entering, or attempting to enter the port of discharge or to reach the place of delivery or attempting or commencing to discharge, shall be entitled to discharge the Goods or any part of them at any port or place selected by the Ocean Carrier or to carry them back to the port of loading or place of receipt and there discharge them. Any actions under (3) and (4) above shall constitute complete and final delivery and full performance of this contract, and the Ocean Carrier thereafter shall be free from any responsibility for carriage of the Goods. (B) If, after storage, discharge, or any actions according to subpart (A) above the Ocean Carrier makes arrangements to store and/or forward the Goods, it is agreed that he shall do so only as agent for and at the sole risk and expense of the Merchant without any liability whatsoever in respect of such agency.

(B) The Merchant shall reimburse the Ocean Carrier forthwith upon demand for all extra freight charges and expenses incurred for any actions taken according to subpart (A), including delay or expense to the Vessel, and the Ocean Carrier shall have a lien upon the Goods to that extent. (C) The situations referred to in subpart (A) above shall include, but shall not be limited to, those caused by the existence or apprehension of war declared or undeclared, hostilities, riots, civil commotions, or other disturbances closure of, obstacle in, or danger to any port or canal, blockade, prohibition, or restriction on commerce or trading quarantine, sanitary, or other similar regulations or restrictions, strikes, lockouts or other labor troubles whether partial or general and whether or not involving employees of the Ocean Carrier or its Subcontractors, congestion of port, wharf, sea terminal, or similar place, shortage, absence or obstacles of labor or facilities for loading, discharge, delivery, or other handling of the Goods, epidemics or diseases, bad weather, shallow water, ice, landslip, or other obstacles in navigation or carriage (D) The Ocean Carrier, in addition to all other liberties provided for in this Article, shall have liberty to comply with orders, directions, regulations or suggestions as to navigation or the carriage or handling of the Goods or the Vessel howsoever given, by any actual or purported government or public authority, or by any committee or person having under the terms of any insurance on the Vessel, the right to give such order, direction, regulation, or suggestion. If by reason of and/or in compliance with any such order, direction, regulation, or suggestions, anything is done or is not done the same shall be deemed to be included within the contractual carriage and shall not be a deviation.

**9. (Description and Particulars of Goods)** Any reference on the face of this Bill of Lading to marks, numbers, description, quantity, quality, gauge, weight, measure, nature, kind, value, and any other particulars of the Goods, is as furnished by the Merchant. The Ocean Carrier shall not be responsible for the accuracy of any such reference and is not bound thereby. The Merchant warrants to the Ocean Carrier that the descriptions and particulars furnished by him are correct, and the Merchant shall indemnify the Ocean Carrier against all loss, damage, expenses, liability, penalties and fines arising or resulting from inaccuracy of any description or particular.

**10. (Use of Container)** When the Goods are not already packed into a container at the time of receipt by the Ocean Carrier, the Ocean Carrier shall be at liberty to pack and carry the Goods in any type of container.

**11. (Ocean Carrier's Container)** (A) The Merchant assumes full responsibility for and shall indemnify the Ocean Carrier against any loss of or damage to the Ocean Carrier's containers and other equipment if the loss or damage is caused or occurs while in the possession or control of the Merchant, his agents, or common carriers engaged by or on behalf of the Merchant (B) The Ocean Carrier shall in no event be liable for, and the Merchant shall indemnify and hold the Ocean Carrier harmless from, any death of or injuries to persons, or loss of or damage to property, caused by the Ocean Carrier's container or its contents while in the possession or control of the Merchant, his agents, or common carriers engaged by or on behalf of the Merchant.

**12. (Container Packed by Merchant)** If the cargo received by the Ocean or Inland Carrier is in a container packed by or on behalf of the Merchant. (A) This Bill of Lading is prima facie evidence of the receipt only of the number on the face of this Bill of Lading. The condition and particulars of the contents are unknown to the Ocean and Inland Carriers, and the Ocean Carrier accepts no responsibility for the accuracy of the description of condition or particulars. (B) The Merchant warrants (1) that the stowage of the contents of the containers and the closing and sealing of the containers are safe and proper, and (2) that the containers and their contents are suitable for handling and carriage in accordance with the terms of this Bill of Lading, including Article 15. In the event of the Merchant's breach of any of these warranties, the Merchant and not the Ocean Carrier shall be responsible for, and the Merchant shall indemnify and hold Ocean Carrier harmless from, any resulting loss or damage to persons or property (including the Goods) (C) The Merchant shall inspect the container when it is furnished by or on behalf of the Ocean Carrier, and the container shall be deemed to have been accepted by the Merchant as being in sound and suitable condition for the purpose of the transport contracted for in this Bill of Lading, unless the Merchant gives notice to the contrary, in writing, to the Ocean Carrier before the transport. (D) If the container is delivered after transport by the Ocean or Inland Carrier with seals intact, such delivery shall be deemed to be full and complete performance of the Ocean Carrier's obligations under this Bill of Lading, and the Ocean Carrier shall not be liable for any loss of or damage to the contents of the container. (E) The Ocean and Inland Carrier shall have the right to open the container and to inspect its contents without notice to the Merchant, at such time and place as the Ocean or Inland Carrier may deem necessary, and all expenses incurred therefrom shall be borne by the Merchant. (F) If any seal of the container is broken by customs or other authorities for inspection of its contents, the Ocean Carrier shall not be liable for any resulting loss, damage or expenses.

**13. (Special Carriage or Container)** (A) The Ocean Carrier does not undertake to carry the Goods in refrigerated, heated, insulated, ventilated, or any other special hold or container, nor to carry any special container packed by or on behalf of the Merchant, but the Ocean Carrier will treat such Goods or container only as ordinary goods or dry container, respectively, unless: (1) special arrangements for the carriage of such Goods or container have been agreed to in writing between the Ocean Carrier and the Merchant; (2) such special arrangements are noted on the face of this Bill of Lading; and (3) special freights as required has been paid. The Ocean Carrier shall not be responsible for the function of a special container supplied by or on behalf of the Merchant. (B) The Ocean Carrier shall not be liable for any loss of or damage to Goods in a special hold or container arising from latent defects, breakdown, or stoppage of the refrigeration or heating machinery, insulation, ship's plant, or other such apparatus of the Vessel or container, provided that the Ocean Carrier shall before or at the beginning of the transport exercise due diligence to maintain the special hold or container in an efficient state. (C) If the Goods have been packed into a refrigerated container by the Ocean or Inland Carrier, and the particular temperature range requested by the Merchants is inserted in this Bill of Lading, the Ocean Carrier will set the thermostatic controls within the requested temperature range but does not guarantee the maintenance of such temperature inside the container. (D) If the cargo received by the Ocean or Inland Carrier is in a refrigerated container packed by or on behalf of the Merchant, it is the obligation of the Merchant to stow the contents properly and set the thermostatic controls exactly. The Ocean Carrier shall not be liable for any loss of or damage to the Goods arising out of or resulting from the Merchant's failure in such obligation and Ocean Carrier does not guarantee the maintenance of the intended temperature inside the container.

**14. (Dangerous Goods, Contraband)** (A) The Ocean Carrier undertakes to carry Goods of an explosive, inflammable, radioactive, corrosive, damaging, poisonous, or dangerous nature only upon the Ocean Carrier's approval of a written application by the Merchant prior to the carriage of such Goods. Such application must accurately state the name, nature and classification of the Goods, as well as how they are dangerous and the method of rendering them innocuous, together with the full names and addresses of the shipper and the consignee. (B) The Merchant shall undertake that the nature and danger of such Goods is distinctly hand permanently marked on the outside of the package or container containing the Goods. (C) Merchant shall submit all documents or certificates required in connection with such Goods by any applicable statue or regulation or by the Ocean Carrier (D) Whenever the Goods are discovered to have been received by the Ocean or Inland Carrier without complying with subparts (A), (B) or (C) above, or the Goods are found to be contraband or prohibited by any law or regulation of any place during the transport, the Ocean Carrier shall be entitled to have such Goods rendered innocuous, thrown overboard, discharged, or otherwise disposed of at the Ocean Carrier's discretion without compensation, and the Merchant shall be liable for and indemnify the Ocean Carrier against any loss, damage or liability, including loss of freight, and any other expenses directly or indirectly arising out of custody or carriage of such Goods. (E) The Ocean Carrier may exercise the right conferred upon it under the preceding subpart whenever it is apprehended that Goods received in compliance with subparts (A), (B) and (C) above has become dangerous, even if not dangerous when received by the Ocean or Inland Carrier. (F) The Ocean Carrier has the right to inspect the contents of any package or container at any time and place without the prior notice to Merchant and at the risk and expense of the Merchant.

**15. (Stowage Under and on Deck)** (A) Goods in containers, vans, trailers, or chassis may be carried under deck or on deck, and when such Goods are carried on deck the Ocean Carrier shall not be required to specially note mark, or stamp any statement of "on deck stowage" on the face of this Bill of Lading, any custom to the contrary notwithstanding. Such on deck carriage shall not be considered a deviation. (B) Goods stowed in poop, forecastle, deck house, shelter deck, passenger space, or any other covered-in-space, or stowed in a container wherever placed, shall be deemed to be stowed under deck for all purposes including general average. (C) Lumber, earth moving equipment and all other Goods customarily or reasonably carried on deck may, at Ocean Carrier's option, be carried on deck without further notice to Merchant and without liability to the Ocean Carrier for the risks inherent in or incident to such carriage. Such on deck carriage shall not be considered a deviation. (D) In respect of Goods not in containers and carried on deck, and stated on this Bill of Lading to be so carried, all risks of loss or damage from perils inherent in or incident to the custody or carriage of such Goods shall be borne by the Merchant and in all other respects the Ocean Carrier shall have the benefit of the provisions of the applicable, version of the Hague Rules (including U.S. COGSA, notwithstanding Section 1301 (c) thereof), and the terms of this Bill of Lading.

**16. (Live Animals and Plants)** With respect to the custody and carriage of live animals and plants, all risks of loss or damage by perils inherent in or incident to such carriage shall be borne by the Merchant, and in all other respects the Ocean Carrier shall have the benefit of the provisions of the applicable version of the Hague Rules (including U.S. COGSA, notwithstanding Section 1301(c) thereof), and the terms of this Bill of Lading.

**17. (Valuable Goods)** The Ocean Carrier shall not be liable to any extent for any loss of or damage to or in connection with precious metals, stones, or chemicals, jewelry, currency, negotiable instruments, securities, writings, documents, works of art, curios, heirlooms, or any other valuable goods, including goods having particular value only for the Merchant, unless the true nature and value of the Goods have been declared in writing by the Merchant before receipt of the Goods by the Ocean or Inland Carrier, the same is inserted on the face of this Bill of Lading and additional freight has been paid as required.

**18. (Heavy Lift)** (A) The weight of a single piece or package exceeding 2,240 lbs. gross must be declared by the Merchant in writing before receipt by the Ocean or Inland Carrier and must be marked clearly and durably on the outside of the piece or package in letters and figures not less than two inches high. (B) If the Merchant fails in his obligations under the preceding subpart (1) the Ocean Carrier shall not be responsible for any loss of or damage to in connection with the Goods. (2) The Merchant shall be liable for resulting loss of or damage to any person or property, and (3) Merchant shall indemnify the Ocean Carrier against any resulting loss, damage, or liability suffered by the Ocean Carrier.

**19. (Delivery by Marks)** (A) The Ocean Carrier shall not be liable for failure or delaying delivery in accordance with marks, unless such marks have been clearly and durably stamped or marked upon the Goods, package, or container by the Merchant before they are received by the Ocean or Inland Carrier, in letters and numbers not less than two inches high, together with the names of the port of discharge and place of delivery. (B) In no circumstances shall the Ocean Carrier be responsible for delivery in accordance with other than leading marks. (C) The Merchant warrants that the marks on the Goods, packages and containers correspond to the marks shown on this Bill of Lading and also in all respects comply with all laws and regulations in force at the port of discharge or place of delivery. The Merchant shall indemnify the Ocean Carrier against all loss, damage or expenses resulting from inaccuracy or incompleteness of the marks. (D) Goods that cannot be identified as to marks or numbers, cargo seeping liquid residue and any unclaimed goods not otherwise accounted for may be allocated for the purpose of completing delivery to the various Merchants of Goods of like character in proportion to any apparent shortage, loss of weight or damage.

**20. (Delivery)** (A) The Ocean Carrier shall have the right to deliver the Goods at any time at the Vessels side, customhouse, warehouse, wharf, or any other place designated by the Ocean Carrier, within the geographic limits of the port of discharge or place of delivery shown of the face of this Bill of Lading (B) The Ocean Carrier's responsibility shall cease when the Goods have been delivered to the Merchant Inland Carrier connecting carrier or any other person entitled to receive the Goods on Merchant's behalf at the place designated by the Ocean Carrier Delivery of the Goods to the custody of customs or any other public authority shall constitute final discharge of the Ocean Carrier's responsibility. (C) In case the cargo received by the Ocean Carrier is containers packed by or on behalf of the Merchant (1) The Ocean Carrier shall only be responsible for delivery of the total number of containers received (2) The Ocean Carrier shall not be required to unpack the containers and deliver their contents in accordance with brands, marks, numbers sizes to types of items or pieces (3) At the Ocean Carrier is discretion and upon the Merchant's request in writing to the Ocean Carrier at least 3 days prior to the scheduled date of arrival of the Vessel at the port of discharge containers may be unpacked and their contents delivered by the Ocean Carrier in accordance with the written request. In such a case if the seal of the containers is intact at the time of unpacking all the Ocean Carrier's obligations under this Bill of Lading shall be deemed to have been discharged the Ocean Carrier shall not be responsible for any loss or damage resulting from such delivery and the Merchants shall be liable for an appropriate adjustment of the freight and any additional charges incurred.
(D) If the Goods have been packed into a container by the Ocean Carrier shall unpack the container and deliver its contents and the Ocean Carrier shall not be required to deliver the Goods in the container. At the Ocean Carrier's discretion, and subject to prior arrangement between the Merchant and the Ocean Carrier the Goods may be delivered to Merchant in the container, in which case if the container is delivered with seals intact all the Ocean Carrier's obligations under this Bill of Lading shall be deemed to have been discharged, and the Ocean Carrier shall not be responsible for any loss or damage to the contents of the container. (E) Optional delivery shall be granted only when arranged prior to the time of receipt of the Goods by Ocean Carrier and if expressly stated on the face of this Bill of Lading. The Merchant desiring to avail himself of the option so expressed must give notice in writing to the Ocean Carrier at the first port of call named in the option at least 48 hours prior to the Vessel's arrival there, otherwise the Goods shall be landed at any of the optional ports at Ocean Carrier's option, and the Ocean Carrier's responsibility shall then cease. (F) Ocean Carrier is not responsible to give notification, in writing or otherwise, either to Merchant or others, of the arrival, discharge, or disposition of Goods, any custom or agreement to the contrary notwithstanding, and notwithstanding any notation on the face of this Bill of Lading, concerning notification or a notify party.

**21. (Transshipment and Forwarding)** (A) Whether arranged beforehand or not, the Ocean Carrier shall be at liberty without notice to carry the Goods wholly or partly by the named or any other Vessel, craft barge, or other means of transport by water, land or air, whether or not owned or operated by the Ocean Carrier. (B) The Ocean Carrier may under any circumstances whatsoever discharge the Goods or any part of them at any port or place for transshipment and store them afloat or ashore and then forward them by any means of transport. (C) If the Goods cannot be found at the port of discharge or place of delivery, or if they be miscarried, they, when found, may be forwarded to their intended port of discharge or place of delivery at the Ocean Carrier's expense, but the Ocean Carrier shall not be liable for any loss, damage, delay, or depreciation arising from such forwarding. (D) In case of Port-to-Port Transportation, transshipment of cargo, or receipt of cargo from ports or inland points not including within the ship's itinerary or the Ocean Carrier's service, is to be at the sole risk and expense of the Merchant, and neither the Ocean Carrier not its Vessel shall be deemed to be the agent or principal of a prior or subsequent carrier notwithstanding the issuance by the Ocean Carrier of a Bill of Lading, receipt, or other shipping document at a time or place prior to that at which the Goods are received by the Ocean Carrier.

**22. (Fire)** The Ocean Carrier shall not be responsible for any loss of or damage to the Goods arising from fire occurring at any time, even though before loading on or after discharge from the Vessel, unless caused by the actual fault or privity of the Ocean Carrier

**23. (Lien)** (A) The Ocean Carrier shall have a lien on the Goods, which shall survive delivery, for all freight, dead freight, demurrage, damages, loss, charges, expenses, and any other sums (including costs, customs fees, attorney fees, and other fees for recovering the sums) chargeable to the Merchant under this Bill of Lading and any preliminary contract for custody or carriage of the Goods. Ocean Carrier may foreclose the lien by selling the Goods without notice to the Merchant privately or by public auction. If on sale of the Goods the proceeds fail to cover the amount due and the costs and fees incurred, the Ocean Carrier shall be entitled to recover the deficit from the Merchant. (B) If the Goods are unclaimed during a reasonable time, or whenever in the Ocean Carrier's opinion the Goods will become deteriorated, decayed or worthless, the Ocean Carrier (without responsibility to it) may at its discretion and subject to its lien, sell, abandon, or otherwise dispose of such Goods at the sole risk and expense of the Merchant.

**24. (Freight and Charges)** (A) Freight may be calculated on the basis of the particulars of the Goods furnished by the Merchant, who shall be deemed to have guaranteed to the Ocean Carrier the accuracy of the contents, weight, measure, or value as furnished by him at the time of receipt of the Goods by the Ocean or Inland Carrier, but the Ocean Carrier for the purpose of ascertaining the actual particulars may at any time and at the risk and expense of the Merchant open the container or package and examine contents, weight, measure, and value of the Goods. In case of incorrect declaration of the contents, weight, measure and or value of the Goods, the Merchant shall be liable for an bound to pay to the Ocean Carrier: (1) the balance of freight between the freight charged and that which would have been due had the correct details been given, plus (2) expenses incurred in determining the correct details, plus (3) as liquidated and ascertained damages, an additional sum equal to the correct freight. (B) Full freight to the port of discharge or place of delivery shall be considered as completely earned on receipt of the Goods by the Ocean Carrier, whether the freight be stated or intended to be prepaid or to be collected at destination. The Ocean Carrier shall be entitled to all freight and other charges due hereunder, whether actually paid or not and to receive and retain such freight and charges under any circumstances, whether the Vessel and/or the Goods be lost or not, or the voyage be broken up, frustrated, or abandoned at any stage of the entire transit. Full freight shall be paid on damaged or unsound Goods. (C) The Payment of freight and/or charges shall be made in full and in cash without any offset, counter claim, or deduction. Where freight is payable at the port of discharge or place of delivery, such freight and all other charges shall be paid in the currency named in this Bill of Lading, or, at Ocean Carrier's option, in other currency subject to the regulators of the freight conference concerned, if any, or custom at the place of payment. (D) Goods once received by the Ocean Carrier cannot be taken away or disposed of by the Merchant except upon the Ocean Carrier's consent and after payment of full freight and compensation for any loss sustained by the Ocean Carrier through such taking away or disposal. (E) If the Goods are not available when the Vessel is ready to load: (1) The Ocean Carrier is relieved of any obligation to load such Goods and the Vessel may leave the port without further notice. (2) Unless the unavailability arises in the course of combined transport and is caused by the failure of an Inland Carrier to perform its obligations under this Bill of Lading, dead freight shall be paid by the Merchant. (F) The Merchant shall be liable for and shall indemnify the Ocean Carrier against: (1) all dues, duties, taxes, consular fees, and other charges levied on the Goods, and (2) all fines, damages and losses sustained by the Ocean Carrier in connection with Goods, howsoever caused, including the Merchant's failure to comply with laws and regulations of any public authority in connection with the Goods, or failure to procure consular, Board of Health, or other certificates to accompany the Goods. The Merchant shall be liable for return freight and charges on any Goods refused exportation or importation by any public authority. (G) If the Ocean Carrier is of the opinion that the Goods are in need of sorting, inspecting, mending, repairing, or reconditioning, or otherwise require protecting or caring for, the Ocean Carrier at its discretion may, by itself or through Subcontractors, and as agent for the Merchant, carry out such work at the risk and expense of the Merchant. (H) The shipper, consignor, consignee, owner of the Goods and holder of this Bill of Lading shall be jointly and severally liable to the Ocean Carrier for the payment of all freight and charges and for the performance of the obligations of any of them under this Bill of Lading.

**25. (Notice of Claim and Time for Suit against Ocean Carrier)** (A) Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Ocean Carrier at the port of discharge or place of delivery before or at the time of delivery of the Goods or, if the loss or damage is not apparent, within 3 days after delivery, the Goods shall be deemed to have been delivered as described in this Bill of Lading. (B) The Ocean Carrier shall be discharged from all liability in respect of the Goods, including without limitation non delivery, misdelivery, delay, loss, or damage, unless suit has been brought within one year after delivery of the Goods or the date when the Goods should have been delivered. Suit shall not be considered to have been "brought" within the time specified unless process shall have been served and jurisdiction obtained over the Ocean Carrier within such time.

**26. (Limitation of Liability)** (A) Subject to subpart (B) below for the purpose of determining the extent of the Ocean Carrier's liability for loss of or damage to the Goods, the Merchant agrees that the value of the Goods is the Merchant's net invoice cost, plus freight and insurance premium, if paid. The Ocean Carrier shall not be liable for any loss or profit or any consequential loss. (B) Insofar as the loss of or damage to or in connection with the Goods was caused during the part of the custody or carriage to which the applicable version of the Hague Rules applies: (1) The Ocean Carrier shall not be liable for loss or damage in an amount exceeding the minimum allowable per package or unit in the applicable version of the Hague Rules, which when U.S. COGSA is applicable is an amount not exceeding U.S. $500 per package or customary freight unit, unless the value (and nature) of Goods higher than this amount has been declared in writing by the Merchant before receipt of the Goods by the Ocean Carrier and inserted on the face of this Bill of Lading and extra freight has been paid as required. If the actual value of the Goods per package or unit exceeds such declared value, the value shall nevertheless be deemed to be the declared value, and the Ocean Carrier's liability, if any, shall not exceed the declared value. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value. If the declared value has been willfully misstated or is markedly higher than the actual value, the Ocean Carrier shall not be liable to pay any compensation.

26. Where the cargo has been packed into a container unitized into a similar article of transport by or on behalf of the Merchant, it is expressly agreed the number of such containers or similar articles of transport shown on the face of this Bill of Lading shall be considered as the number of the packages or units for the purpose of the application of the limitation of liability provided for in this Article.

**27. (General Average: New Jason Clause)** (A) General average shall be adjusted, stated and settled at any port or place as the Ocean Carrier's option and according to the York-Antwerp Rules, 1994 and as to matters not provided for by these Rules, according to the laws and usages of the port or place of adjustment and in the currency selected by the Ocean Carrier. The general average statement shall be prepared by the adjusters appointed by the Ocean Carrier. Average agreement or bond and such cash deposit as the Ocean Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon and any other additional securities as the Ocean carrier may require shall be furnished by the Merchant to the Ocean Carrier before delivery of the Goods. (B) In the event of accident, danger, damage, or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not for which or for the consequence of which the Ocean Carrier isn't responsible by statue, contract, or otherwise, the Goods and the Merchant shall jointly and severally contribute with the Ocean Carrier in general average to the payment of any sacrifices, loss, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the Goods. If a salvage ship is owned or operated by the Ocean Carrier, salvage shall be paid for as fully and in the same manner as if such salvaging ship belonged to strangers.

**28. (Both to Blame Collision)** If the Vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect, or default of the Master, mariner, pilot, or servants of the owner of the Vessel in the navigation or in the management of the Vessel, the Merchant shall indemnify the Ocean Carrier against all loss or liability which might be incurred directly or indirectly to the other or non-carrying ship or her owners insofar as such loss or liability represents loss of or damage to his Goods or any claim whatsoever of the Merchant paid or payable by the other or non-carrying ship or her owners to be Merchant and set-off, recouped, or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying Vessel or its owner. The foregoing provisions shall also apply where the owners, operators, or those in charge of any ship or ships or objects other than, or in addition to the colliding ships or objects are at fault in respect of a collision contact stranding or other accident.

**29. (Carriage of Metal Products, Lumber, Cotton)** (A) The term "apparent good order and condition" when used in this Bill of Lading does not mean: (1) with reference to iron, steel, or metal products, that the Goods when received were free from visible rust or moisture, (2) with reference to lumber, timber, plywood, or other wood products, that the Goods when received were free from visible stains, discoloration, moisture, shakes, holes, chaffed, breakage or splitting. If the Merchant so requests a substitute Bill of Lading will be issued setting forth any notations as to the foregoing that may appear on the mate's or tally clerk's receipts or similar document. (B) Description of the condition of cotton cargo does not relate to the sufficiency or not or condition of the covering nor to any damage, resulting therefrom. Ocean Carrier shall not be responsible for any such damage.

**30. (Grain)** Discharge of grain received by the Ocean Carrier in bulk may be in port, on barges, and or lighters, or elsewhere, using or not using elevators, and such discharge shall constitute a sufficient delivery by the Carrier. Thereafter said grain shall be at the risk and expense of the Merchant.

**31. (Intermodal Transportation)** (A) This Bill of Lading may be issued for Intermodal Transportation in any country. When so issued as between the Merchant and an Inland Carrier custody and carriage of the Goods by the Inland Carrier are subject to the relevant laws, regulations, tariffs and Bill of Lading are available from the Ocean or Inland Carrier upon request. (B) Claims by the Merchant against an Inland Carrier for loss or damage shall be given and suit commenced as provided in the Inland Carrier's applicable Bill of Lading.

**32. (Ocean Carrier's Tariff)** This Bill of Lading is subject to the Ocean Carrier's applicable tariff. Copies of the applicable tariff are obtainable from the Ocean Carrier upon request.

**33. (Severability of Terms)** The terms of this Bill of Lading are severable and if any part or term is declared invalid or unenforceable, the validity or enforceability, of any other part or term shall not be affected.

**34. (Himalaya Clause)** All exceptions, exemptions defenses immunities, limitations on liability, privileges and conditions granted or provided by this Bill of Lading or by applicable tariff or by statue or for the benefit of the Carrier shall also apply to and for the benefit of all the officers and employees of the Carrier and the agents, officers and crew of the Vessel and to and for the benefit of all parties performing services in connection with the Goods as agents or contractors of the Carrier (including, without limitation, stevedores, terminal operators and agents) and the employees of each of them.